FARMER'S BANK & BANK OF KENTUCKY v. YOUNGER & MITCHELL.

**Suit to Enforce Lien for Purchase Money on Land — Necessary Parties.**
> The legal title to the land never having been in decedent and the equity which descended to his heirs having been sold, in a suit to settle his estate his widow and heirs had nothing to lose or gain on the result of the suit to enforce the purchase-money lien on the land, and were, therefore, not necessary parties thereto.

APPEAL FROM OWEN CIRCUIT COURT.

March 5, 1867.

OPINION OF THE COURT BY JUDGE HARDIN:

The legal title to the tract of 214 acres of land never having been in Austin Shelton, and the equity which descended to his heirs having been sold in the suit to settle his estate, which appears to have been insolvent, so that the widow and heirs of Shelton had nothing to lose or gain by the result of the suit of Younger and Mitchell to enforce their lien on the land. We do not think the failure to make them parties is an available objection to the judgment on this appeal; nor was the failure to make B. J. Adams, or

his representatives, parties. Adams was a beneficiary under the deed of trust to Alexander, but that did not embrace the 214 acres of land.

Nor do we perceive that the judgment was erroneous as to either the claim of Sophia Call, or Letitia Whitaker. The right of the former to dower as the widow of Vallandingham fully appears, and the contract between Call and his stepdaughter, made in her infancy, does not appear to have been ratified in such a way as to conclude her from claiming the forty-five and one-half acres of land, in disregard of the contract which was manifestly one which did not commend itself to favor in a court of equity.

It does not seem to us that any of the parties acquired through, or under, the mortgage from Call and Shelton to Alexander and Kinny any such rights of substitution or otherwise as were available to overreach, or defeat, the lien of Younger and Mitchell on the 214 acres of land.

Call appears to have sold the 214 acres of land to Shelton, on the 6th day of September, 1854, and put Shelton in possession with his bond for a conveyance, and the widow and heirs of Shelton were so in possession when Call made the mortgage to the banks on the 21st January, 1857; a suit was then pending in the Owen Circuit Court by the administrator of Shelton against his heirs and creditors, in which the fact was alleged by the administrator of Shelton that he had died seized of the land under an executory contract of purchase from Call, at the price of $7,000, which was unpaid.

These and other facts and circumstances appearing in the cause seem to us to have been sufficient, at least, to have put the officers and agents of the banks upon the inquiry as to the lien on the land for the notes of Shelton for the purchase money; and if they were absolute purchasers, for a price paid, which would place them in a more favorable attitude than they now occupy, as having taken the mortgage to secure pre-existing debts, for which they had other securities, we are of the opinion that they would not have acquired by such purchase a paramount lien to that of Younger and Mitchell. Nor does Alexander under his deed of the 10th of December, 1860, stand in a more favorable attitude; that deed was made by Call, as appears, in pursuance of a written contract entered into on the 29th day of July, 1860, by which it appears that this purchase was an arrangement mainly to indemnify Alex-

ander in certain liabilities in which he was bound as Call's security. Besides, as Call's purchase under the judgment, in the suit of Shelton's administrator against Shelton's heirs, gave him no deed of record to deceive or mislead his vendee, Alexander was without record notice of the extinguishment of the lien for purchase money, as against Shelton, unless the papers and record of the suit were equivalent to a recorded deed for that purpose.

It is difficult, moreover, to resist the conclusion that as Alexander, from his proximity to the land, and the notoriety of the fact in the neighborhood that Call had transferred Shelton's notes to Younger and Mitchell, must have known the fact himself, particularly as he was complicated with Call in his liabilities and interested, therefore, in knowing what his rights of property were.

Upon the whole we perceive no available error in the judgment. Wherefore, the judgment is affirmed.